UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| RUTH BYRD, *Administratrix of the Estate of Ardie Byrd*, | ) ) ) | |
| Plaintiff, | ) ) | No. 6:18-CV-53-REW |
| v. | ) ) ) | OPINION & ORDER |
| TRI-STATE HEALTH AND REHABILITATION, et al., | ) ) ) | |
| Defendants. | ) | |

*** *** *** ***

In January 2018, Ruth Byrd, acting as Administratrix of the Estate of Ardie Byrd, sued four out-of-state Defendants—Tri-State Health and Rehabilitation; Tri-State Manor, LLC; Dr. Luis Pannochia;[1] and Heartland Medical, P.C.—in Clay Circuit Court. DE #1-1 (Complaint). The suit, essentially, concerns medical treatment Mr. Byrd received from March 3-18, 2016, at "Tri-State Health and Rehabilitation in Harrogate, Tennessee." *Id.* at ¶¶ 18-19. Following diversity removal, the parties have fully briefed two motions to dismiss. *See* DE ##9, 10, 13, 14, 15, 16; *see also* Fed. R. Civ. P. 12(b)(2). Upon full consideration, and after assuring itself of the existence of subject-matter jurisdiction, *see* DE #27 (Order), the Court **GRANTS** DE ##9 & 10 and dismisses this case, without prejudice,[2] for lack of personal jurisdiction over Defendants.

"When a federal court sits in diversity," as the Court does here, "it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state

---

[1] This Defendant spelled his surname "Pannocchia" in the removal papers. *See, e.g.*, DE #1, at 1. The Court here uses the Complaint spelling.
[2] *See Intera Corp. v. Henderson*, 428 F.3d 605, 620-21 (6th Cir. 2005).

1

could do so." *Newberry v. Silverman*, 789 F.3d 636, 641 (6th Cir. 2015). Accordingly, the Court must first determine whether "the state's long-arm statute . . . permit[s] the exercise of jurisdiction." *Id.* Indisputably, all Defendants are nonresidents of the Commonwealth.

In Kentucky, as the parties perceive relevant here, a

> court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> 1. Transacting any business in th[e] Commonwealth;
>
> 2. Contracting to supply services or goods in th[e] Commonwealth; . . . [or]
>
> 4. Causing tortious injury in th[e] Commonwealth by an act or omission outside th[e] Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in th[e] Commonwealth, provided that the tortious injury occurring in th[e] Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth[.]

KRS 454.210(2)(a)(1), (2), (4).[3] "When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him." KRS 454.210(2)(b).[4]

Under this—Kentucky's long-arm statute—"personal jurisdiction cannot be exercised over a non-resident defendant simply because it has engaged in conduct or

---

[3] Defendants identify subsection (2)(a)(4) as the one in play. DE ##9, at 3; 10, at 9-11. Plaintiff puts (2)(a)(1), (2), & (4) potentially at issue. DE ##13, at 5; 14, at 2; *see also* DE #1-1, at ¶ 14 (citing KRS 454.210 only generally).

[4] The Court notes, for thoroughness, the concept of general jurisdiction, which enables a court "to hear any and all claims against [a party] when [its] affiliations with the State are so 'continuous and systematic' as to render [the party] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Plaintiff, citing only the long-arm statute, makes no argument concerning or assertion of general jurisdiction.

activity that fits within one or more subsections of KRS 454.210(2)(a). **The plaintiff must also show that his claim is one that arises from the conduct or activities described in the subsection.**" *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 55 (Ky. 2011) (emphasis added). While courts construe the provisions of Kentucky's long-arm statute "liberally," the statutory limits "upon jurisdiction must be observed as defined." *Id.* at 56. "[E]ven when the defendant's conduct and activities fall within one of the enumerated categories, the plaintiff's claim still must 'arise' from that conduct or activity before long-arm jurisdiction exists. Claims based upon contacts, conduct, and activities which may not fairly be said to meet one of these explicit categories must be held to be outside of the reach of the statute[.]" *Id.* (rejecting the notion that Kentucky's long-arm statute reaches the outer limits of federal due process).

In *Caesars*, the Kentucky Supreme Court refused the argument that a slip-and-fall claim "arose from" extensive advertising and solicitation activity in the Commonwealth, although that advertising was the but-for cause for the plaintiff visiting the out-of-state fall location. 336 S.W.3d at 58. Instead, the high court ruled, a plaintiff's "cause of action must have originated from, or came [sic] into being, as a result of" the defendant's relevant activities in Kentucky. *Id.* Stated directly,

> the wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction. Conversely, the statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action. If there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction, then jurisdiction is properly exercised. . . . Trial courts will ultimately have to depend upon a common sense analysis, giving the benefit of the doubt in favor of jurisdiction.

*Id.* at 58-59.

3

> The Kentucky Supreme Court's application is worthy of reproduction:
>
> > The wrongful act alleged in Appellee's claim is the failure of Appellants to keep their premises safe for business invitees by negligently permitting spilled butter to remain on its flooring and/or failing to warn its customers of the danger. The statutory predicate proffered for exercising personal jurisdiction over Appellants is KRS 454.210(2)(a)(1), "[t]ransacting any business in this Commonwealth," which here consists of Appellants' extensive advertising, direct mail solicitations, a rewards program, and extensive civic and charitable activities. A comparison of the wrongful acts underlying Appellee's claim to the Appellants' conduct and activities in this Commonwealth yields the conclusion that the wrongful conduct has no relation at all to the business Appellants transact in this Commonwealth. That is, there is no reasonable and direct nexus between Appellants' marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced Appellee's fall.

*Id.* at 59; *compare Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011) (distinguishing *Caesars*, and finding KRS 454.210 satisfied, because "Hinners's claims for fraudulent misrepresentation and breach of warranty are based on the very same contract . . . upon which long-arm jurisdiction under the statute is predicated").

Byrd, in this scenario, faces "the burden of establishing jurisdiction over the defendant[s]." *Id.* at 895; *see also Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Because the Court rules based on written submissions, Byrd "need only make a prima facie showing of jurisdiction," which she can do by "establishing with reasonable particularity sufficient contacts between [the defendants] and [Kentucky] to support jurisdiction." *Hinners*, 336 S.W.3d at 895; *see also Air Prods.*, 503 F.3d at 549. The Court considers, in this context, "the pleadings and affidavits in the light most favorable to the plaintiff." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Plaintiff may not simply rest on the pleadings. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Plaintiff, on these facts, fails to carry her burden, and the Court concludes that it lacks personal jurisdiction over Defendants. Simply put, Byrd's claims do not arise from any of Defendants' Kentucky conduct or activities, as particularly described in KRS 454.210. Under the *Caesars* rubric, none of Byrd's causes of action originated from, or came into being as a result of, any Defendant's relevant actions in Kentucky. Instead, each cause of action arose from, or came into being as a result of, Defendants' (alleged) actions *in Tennessee*.

To review Plaintiff's claims: Count 1 alleges negligence. Count 2 is labeled "Wrongful Death." Count 3's title is "Negligent Hiring, Retention, Failure to Train or Transfer." Count 4 is a punitive damages claim. Count 5 expresses a vicarious liability theory. Byrd herself describes the case as a "medical malpractice and wrongful death action." DE #13-2, at ¶ 17. The Court has specifically considered Plaintiff's factual allegations in the Complaint (including ¶¶ 10-12 & 17-20), as well as her affidavit, *see* DE #13-2. Relative to Kentucky, all defendants are out-of-state and non-resident. *See* DE #27.

Indeed, the Complaint hinges on events at Tri-State's Tennessee facility from March 3 to March 18, 2016. The negligence theory blankets Mr. Byrd's treatment from "presentation" and "throughout his admission[] there [at Tri-State]." DE #1-1, at ¶ 32. The claims of negligent staffing plainly address only localized (Tennessee) behavior. Although the torts allegedly culminated in Mr. Byrd's death, the Complaint alleges actionable conduct by Defendants, relative to the decedent, only in Tennessee. The medical providers hold no apparent Kentucky licensure to deliver services in the Commonwealth.

KRS 454.210(2)(a)(1), concerning transacting business in Kentucky, provides no basis for the Court to exercise personal jurisdiction over Defendants. Byrd's claims, centered on medical treatment and staffing concerns in Tennessee, do not arise from any business transactions Defendants may have in Kentucky. *Cf., e.g.*, *Caesars*, 336 S.W.3d at 58-59 (holding slip and fall did not arise from transacting business in Kentucky); *Wilson v. Hirschbach Motor Lines, Inc.*, No. 14-139-DLB-HAI, 2015 WL 1585338, at *5 (E.D. Ky. Apr. 9, 2015) (concluding that a claim of "negligent, careless and reckless operation of [a] vehicle" did not "arise from" transacting business in Kentucky: "Although the Passenger Authorization Form might have enabled Cox to go on the trip in the first place, it had absolutely no effect on the manner in which Wilson operated the semi-truck."); *John Conti Coffee Co. v. MAPCO Express, Inc.*, No. 13-39-GFVT, 2014 WL 12648449, at *3-4 (E.D. Ky. Jan. 2, 2014) (determining that alleged trademark infringement did not "arise from" transacting business in Kentucky). There is no reasonable and direct nexus, under the applicable standard, between Byrd's claims and any business Defendants transact in Kentucky.

Plaintiff claims that Tri-State[5] has an ongoing referral relationship from the University of Kentucky Medical Center and derives revenue from treating Kentucky patients. The Court accepts that allegation as true. Yet, for long-arm purposes in Kentucky, those facts do not here establish jurisdiction. *Caesars* addressed the situation where Kentucky conduct (extensive advertising, direct mail solicitations, a rewards program, and extensive civic and charitable activities) causally led to a plaintiff visiting

---

[5] With utterly no allegations of domestic conduct by the physician or his professional corporation, the Court's conclusions as to jurisdiction over Pannochia and Heartland are comparatively even stronger.

6

the casino. *See* 336 S.W.3d at 59. The plaintiff suffered an injury there. Although the casino's Kentucky conduct was the but-for cause of the plaintiff being present on the premises, the Kentucky conduct was not directly and reasonably related to the tort itself: "Appellee's presence at the Indiana Casino did not cause her injury." *Id.* A claim, thus, does not "arise from" Kentucky conduct if the Kentucky conduct simply leads to a person being at a foreign site and then suffering a proximately disconnected tort. At most, that is the situation here. UK referred Mr. Byrd to Tri-State, and Tri-State accepted Mr. Byrd as a patient. The UK-Tri-State relationship causally produced the referral, but that Kentucky act did not cause the medical malpractice alleged to have occurred in Tennessee. As stated in *Hinners*, 336 S.W.3d at 896:

> In *Caesars,* we rejected the use of a *"but for"* test in determining if a plaintiff's claim has "aris[en] from" the specific statutory predicate authorizing *in personam* jurisdiction. Instead, we said that there must exist **"a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction."** [citing *Caesars*, 336 S.W.3d at 58 (emphasis in original)].

Given that Plaintiff claims only that Tri-State's relationship with UK and its willingness to accept Kentucky patients caused Mr. Byrd to end up in Tennessee, there is no reasonable and direct nexus to any Defendant's adherence to the tort standard of care.[6]

A like result attends KRS 454.210(2)(a)(2), concerning contracting to supply services or goods in Kentucky. As above, Byrd's specific claims—touching on medical negligence and staffing concerns allegedly occurring in Tennessee—have nothing to do

---

[6] That the referral involved potential medical care does not, in the Court's view, change the conclusion. In *Caesars*, the casino directly engaged in conduct to draw customers to the premises, and a premises liability claim did not arise from the conduct. Here, the UK connection to Tri-State may have resulted in Mr. Byrd's placement in Tennessee, but the placement source and the treatment and staffing quality at Tri-State are distinct channels of analysis.

7

with any Kentucky contract for goods or services (including one potentially contemplated in Complaint ¶ 10 and DE #13-2, at ¶ 7). *See Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 628-29 (6th Cir. 2016). As cases suggest, even if such an "agreement" is the reason Mr. Byrd received medical treatment in Tennessee, the document is unrelated to the Complaint's causes of action—*i.e.*, there is no reasonable and direct nexus between Plaintiff's claims (medical negligence and personnel complaints) and the long-arm hook (a contract). *See, e.g.*, *Caesars*, 336 S.W.3d at 58-59; *Wilson*, 2015 WL 1585338, at *5.

A KRS 454.210(2)(a)(4) theory meets a similar fate. That provision requires that a tortious injury occurring in Kentucky must arise out of Defendants' doing or soliciting of business, or persistent course of conduct or derivation of substantial revenue, within Kentucky. Again, even accepting the allegations in Byrd's Affidavit and Complaint, Plaintiff's claims simply do not arise from, and have no reasonable and direct nexus, to any Defendant's business, solicitation of business, course of conduct, or derivation of revenue within Kentucky. *See also Cox*, 647 F. App'x at 629. Instead, they relate to the medical care Mr. Byrd received, and Defendants' employment practices, in Tennessee. Whether Defendants had a "common practice" to accept and solicit patients from Kentucky, DE #1-1, at ¶ 11, and whether Defendants "receive funding from official entities of the Commonwealth," *id.* ¶ 12, are simply not relevant to the *Caesars* analysis regarding Byrd's particular claims.[7]

---

[7] The Court has strong, alternative doubt about whether Kentucky would view this situation as one involving "tortious injury in this Commonwealth," the § 454.210(2)(a)(4) scenario. All interaction between Mr. Byrd and Defendants happened in Tennessee. All alleged negligence of Defendants happened in Tennessee, and Byrd alleges injuries occurring throughout and during the period of admittance in Tennessee. Tri-State ultimately discharged or transferred Mr. Byrd to a local Kentucky hospital; he returned to UK and expired on March 27, 2016.

Case law amply supports these conclusions. The Court canvasses a few examples.

Take, for instance, one analytical illustration from the Kentucky Court of Appeals:

> It is undisputed that Metro Specialty Surgery Center is an Indiana business entity with its principal place of business in Jeffersonville, Indiana. It is not registered with the Kentucky Secretary of State, and it is not authorized to conduct business in the Commonwealth. . . . It is undisputed that the surgery center was not involved with the care and treatment that Teddy Cooper was offered or provided in the Commonwealth. The surgery center provided care to him only in Indiana. The surgery center does not supply goods nor does it contract to supply goods in the Commonwealth. It has no agents or employees working on its behalf in Kentucky. It maintains no office in Kentucky; it does not insure any party in the Commonwealth; it does not own property here; and the Coopers have never alleged that it caused tortious injury here. Under these circumstances, we conclude that the requirements of our long-arm statute have not been satisfied.

*Cooper v. Nair*, No. 2013-CA-1746-MR, 2015 WL 128549, at *4 (Ky. Ct. App. Jan. 9, 2015), *discretionary review denied* Dec. 10, 2015. A like result pertains here.

---

At most, Plaintiff can claim that the death aspect of the case occurred "in this Commonwealth." Cases under the long-arm statute have been highly resistant to viewing medical care as creating a portable tort, one roaming with the movements of the treated patient. *See Kennedy v. Ziesmann*, 526 F. Supp. 1328, 1331 (E.D. Ky. 1981) (rejecting "the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt"); *Jackson v. Wileman*, 468 F. Supp. 822, 824 (W.D. Ky. 1979) (rejecting "portable tort" in medical negligence context, focusing not on patient's home but rather on "place where services are rendered"). Further, Kentucky, in the venue and wrongful death context, defines the place of injury as the breach situs. *See, e.g.*, *O'Bannon v. Allen*, 337 S.W.3d 662, 666 (Ky. Ct. App. 2011) ("Negligence occurs when a duty arises and is breached."). That rule is an entrenched one. *See Melton's Adm'r v. S. Ry. Co.*, 33 S.W.2d 690, 693 (Ky. 1930) (applying prior venue rules and fixing wrongful death injury as location not of death but "where the facts occur out of which plaintiff's cause of action arises . . . where the accident occurred, although appellant's decedent died in this state"); *State ex rel. Gerber v. Mayfield*, 281 S.W.2d 295, 296-97 (Mo. 1955); *Trust Co. of Chi. v. Pa. R. Co.*, 183 F.2d 640, 646 (7th Cir. 1950). The wrongful death statute itself applies when "death of a person results from an injury inflicted by the negligence or wrongful act of another[.]" KRS 411.130. This, too, focuses on infliction of the precipitating injury. Under the Complaint, all alleged harm originated from Tennessee conduct.

The Commonwealth's intermediary court reached an analogous conclusion in *Bondurant v. St. Thomas Hosp.*, 366 S.W.3d 481 (Ky. Ct. App. 2011), *discretionary review denied* June 13, 2012. There, Tennessee defendants' actions of "ordering care upon discharge, to be implemented upon admission to a Kentucky nursing home, which included administering an overdose of medication" were "insufficient to invoke personal jurisdiction over a nonresident defendant in Kentucky." *Id.* at 484; *see also id.* at 485 (rejecting the notion that a Kentucky court would have personal jurisdiction even if the Tennessee defendants "were aware that the services they performed in Tennessee would impact their patient whose follow-up care would be accomplished in Kentucky"). Like Bondurant, Byrd "engaged the Tennessee [defendants] to perform medical services in Tennessee. The [defendants] engaged in no act or omission in Kentucky." *See id.* at 486; *cf. Kennedy*, 526 F. Supp. at 1331-32.[8] A parallel outcome here is, thus, appropriate.

Kentucky's federal courts have reacted similarly. *See, e.g.*, *Preferred Care of Del., Inc. v. Konicov*, No. 5:15-CV-88-KKC-EBA, 2016 WL 2593924, at *4-6 (E.D. Ky. May 4, 2016) ("Because [Konicov] has not sufficiently alleged that any of her claims 'arise from' any in-state activity by Richmond Health Facilities-Kenwood GP, LLC, or Preferred Care Health Facilities, Inc., this Court lacks jurisdiction under Kentucky's long arm statute."); *Wilson v. Wilson*, No. 14-139-DLB-HAI, 2015 WL 5032020, at *4-5 (E.D.

---

[8] *Luftman v. Laboratory for Kidney Pathology, Inc.*, No. 5:16-cv-14-JMH, 2016 WL 5796875 (E.D. Ky. Sept. 30, 2016), which the parties discuss, *see* DE ##9, at 7; 13, at 9, analyzes Kentucky's long-arm statute as coterminous with the limits of due process and, thus, is of little relevance to a particularized KRS 454.210 examination. *Handley v. Indiana & Michigan Electric Co.*, 732 F.2d 1265 (6th Cir. 1984), which Byrd cites, DE #13, at 6, is similarly limited, given the subsequent *Caesars*. Finally, *Lexel Imaging Systems, Inc. v. Video Display Corp.*, No. 5:14-CV-462-KKC, 2015 WL 403140 (E.D. Ky. Jan. 28, 2015), which Plaintiff discusses, DE #13, at 4-7, is factually variant in fundamental ways, as Defendants suggest, DE #15, at 2-3, and of little aid to Byrd.

Ky. Aug. 25, 2015) ("The wrongful acts described in the complaint did not 'arise from' any of [Defendants'] Kentucky activities. More[o]ver, it is undisputed that the alleged negligence occurred only in Iowa."). So too here.

The rigor of the long-arm statute's "arising from" requirement is structurally unmistakable. KRS 454.210 itself, as relevant, thrice invokes the condition in the (2)(a)(4) context—the introductory (2)(a) "claim arising from"; the (2)(a)(4) "provided that the tortious injury . . . arises out of [listed actions] within the Commonwealth"; and, the (2)(b) global caveat limiting jurisdiction to "a claim arising from acts enumerated in this section." In the applicable formulation of this qualifier, Tri-State's conduct within Kentucky is no more than a referral relationship and the treatment of some Kentucky patients (with all professional, health-care conduct occurring only in Tennessee). Per the analysis in *Caesars* and the many medical cases under the long-arm statute, personal jurisdiction does not extend, in a case such as this, to a nonresident medical provider merely accepting referrals of, treating, and billing Kentucky patients where all treatment conduct occurs out of state. *See Bondurant*, 366 S.W.3d at 486 (rejecting jurisdiction against Tennessee providers: "She has chosen to assert claims against Tennessee defendants licensed only in Tennessee, whose offices, affiliates, and employees are located in Tennessee, for services allegedly negligently performed in Tennessee."); *Kennedy*, 526 F. Supp. at 1331 ("But the cause of action against Dr. Ziesmann did not arise from activities in Kentucky merely because he treated a Kentucky resident in Ohio who then returned to Kentucky."); *Bradley v. Mayo Found.*, No. CIV.A. 97-204, 1999 WL 1032806, at *9 (E.D. Ky. Aug. 10, 1999) ("Writing prescriptions, sending letters confirming diagnoses previously made, and telephone consultations are routine actions

taken by medical practitioners regardless of where their patients are located. Such routine actions, when incidental to treatment in the physician's home state, should not subject the physician or his employer to jurisdiction in any state in which his patient happens to reside.").

Additionally, the Court, after careful consideration, denies Plaintiff's requests for jurisdictional discovery. *See* DE ##13, at 10-11; 14, at 3. Her chosen causes of action frame the analysis, and she identifies no discoverable item(s) that would change the jurisdictional result, under the burden applicable in context. *See Cox*, 647 F. App'x at 629 (affirming district court's decision not to permit jurisdictional discovery under an abuse of discretion standard) (citing cases); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (same, based on district court's conclusion that there was "no reasonable basis to expect that further discovery would reveal contacts sufficient to support personal jurisdiction"). Defendants' relationship with UKMC and "other Kentucky hospitals, clinics[,] and doctors," DE #13, at 11, has no relevance to the genesis of Byrd's claims or the KRS 454.210 analysis. Neither does "the number of Kentucky residents who were patients of [Defendants'] facility" during the past decade, "the amounts" they paid, or the "percentage of revenue" such remuneration represented.[9] *See id.* The number of "Kentucky residents" Pannochia "monitored" over the last decade and the "amount of money that he derived from treating Kentucky residents" are likewise

---

[9] The long-arm statute applies, in part, based on a non-resident's Kentucky-based income. However, that income hook pertains only to "substantial revenue from goods used or consumed or services rendered **in this Commonwealth**, provided that the tortious injury . . . arises out of . . . derivation of substantial revenue **within this Commonwealth**." KRS 454.210(2)(a)(4) (emphasis added). Plaintiff claims that Tri-State treats Kentucky patients and gets funds for such treatment. Plaintiff does not claim Tri-State renders services for payment or derives revenue for conduct by it **in Kentucky**. The distinction is critical and delimits the statute's reach.

12

immaterial. *See* DE #14, at 3. As already noted, the Court decides the personal jurisdiction issue after considering the written submissions in the light most favorable to Byrd. *See Serras*, 875 F.2d at 1214; *see also* DE #15, at 7 (admitting that "there is no dispute that Tri-State Health and Rehabilitation receives patients from University of Kentucky Hospital and payments from Kentucky payor sources"). There are, thus, no "contested issues of fact," in context, "that require discovery." *Clark v. Kolbell*, No. 2014-CA-747-MR, 2016 WL 304625, at *5 (Ky. Ct. App. Jan. 22, 2016), *discretionary review denied* Aug. 17, 2016.[10]

Finally, a few words on venue. Plaintiff does not request venue transfer as an alternative to dismissal. To the contrary, she contends that this District provides proper venue. *See* DE #13, at 11-13. However, to address Defendants' alternative 28 U.S.C. §§ 1404(a) & 1406(a) requests, *see* DE ##9, at 9-17; 10, at 17-19; 15, at 8-14, transfer pursuant to § 1404(a) would, on this record, be improper. *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) ("In the present case, the district court denied the Pittocks' motion to transfer because the transfer was requested under section 1404(a), and the district court did not have personal jurisdiction. Based on the personal-jurisdiction requirement in section 1404(a), this decision was proper.").

There is, additionally, no indication that a § 1406(a) transfer would "be in the interest of justice," when Defendants request it alternatively to dismissal and Plaintiff herself opposes. *Cf. Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 484 (6th Cir. 2009) (reversing district court for not making an "interest of justice" determination

---

[10] *Estes v. JI-EE Industry Co., Ltd.*, No. 5:17-CV-322-KKC, 2018 WL 990406 (E.D. Ky. Feb. 20, 2018), which Plaintiff cites, DE #13, at 10, is factually inapposite and, thus, does not aid Byrd's discovery gambit. *Clark* was a summary judgment decision.

13

"although plaintiffs expressly requested transfer"); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003); *Taylor v. Love*, 415 F.2d 1118, 1120-21 (6th Cir. 1969) (citing *Goldlawr, Inc. v. Heiman*, 82 S. Ct. 913, 915-16 (1962)); *Pratt v. Gr[e]yhound Lines, Inc.*, No. 1:09-CV-272, 2010 WL 703109, at *3 (E.D. Tenn. Feb. 24, 2010); *New Earthshell Corp. v. Lycos Internet Ltd.*, No. 14-cv-7665, 2015 WL 4716155, at *5 (D.N.J. Aug. 7, 2015) (citing cases). This is not a case where denying a § 1406 venue transfer could lead to piecemeal litigation. *See, e.g.*, *Costaras v. NBC Universal, Inc.*, 409 F. Supp. 2d 897, 908 (N.D. Ohio 2005). Section 1406(a) "confer[s] broad discretion" on the Court when considering a transfer request, *see Stanifer v. Brannan*, 564 F.3d 455, 457 (6th Cir. 2009), and the Court here chooses to dismiss, not transfer, the case, for all the reasons discussed. Plaintiff opposed the alternative request, and the Court grants Defendants' primary sought relief. The without-prejudice dismissal, of course, potentially leaves open to Plaintiff a variety of litigation choices.

The Court thus concludes, per this KRS 454.210 analysis, that it lacks personal jurisdiction over Defendants. Accordingly, there is no need to assess the federal due process result. Because "the proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process," *Caesars*, 336 S.W.3d at 57, and Byrd fails at step one, the Court need go no further. *See id.* at 56-57; *see also id.* at 59 ("Because Appellee's cause of action does not arise from any of the enumerated provisions contained in the long-arm statute, Kentucky courts lack personal jurisdiction over Appellants in this matter. We therefore need not determine whether the exercise of *in personam* jurisdiction over Appellants would offend federal due process standards."); *Newberry*, 789 F.3d at 641 ("We need not reach the question of federal due process in

this case because Silverman's conduct does not fit within any of the categories enumerated in Kentucky's long-arm statute.").

For these reasons, the Court **GRANTS** DE ##9 & 10 and will enter a separate Judgment.

This the 14th day of December, 2018.

Signed By:
*Robert E. Wier* REW
United States District Judge